Good morning. This is the time set for the case of Planned Parenthood Federation of America versus Center for Medical Progress at all. And we have a lot of 30 minutes to each side. It looks like the Center for Medical Progress will be dividing their time. If that is, if I'm reading this correctly, Ms. Hacker will have 14 minutes, Mr. Zimmerman will have eight minutes, and Catherine Short will have eight minutes. Is that correct? I just wanted to verify that. Yes, that's correct, your honor. All right. Before we begin, I just want to take a moment to thank Judge Friedenthal from the was on a previous document with us as well. So we really appreciate on behalf of Judge Gould, and I really appreciate Judge Friedenthal, assisting our panel and circuit. I think with that, I think we're ready to begin. So if the parties are ready to begin, you may you may proceed. Thank you, your honor. May it please the court. My name is Heather Hacker, and I represent the Biomax, David Daleiden, and Adrian Lopez. I'll be presenting for a total of 14 minutes, and I'd like to reserve four of those minutes for rebuttal. Plaintiffs consistently portray defendants actions as egregious and outrageous criminal conduct. But the fact of the matter is that defendants did nothing that 2020 Dateline or animal rights activists haven't done, and nothing so different from what undercover journalists have been doing since the slavery debate. The fact that we're here on review of a multi-million dollar judgment against defendants for those same actions shows that something went seriously wrong in the district court. Plaintiffs identity as Planned Parenthood and sense of outrage cannot substitute for requiring the basic elements of liability to be satisfied and for the fair presentation of evidence, and both are lacking here. If the district court's conclusions are affirmed, there is no way to limit the inevitable fallout the ruling would have on free speech and journalism in this circuit as the First Amendment scholars and animal rights organizations explained as amici. This court should reject the district court's faulty reasoning and reverse. At minimum, the numerous errors warrant a new trial. There are many claims at issue, and the district court committed many errors, which are detailed in the extensive briefing by the defendants. In the limited time I have today, I hope to address three topics that broadly show reversal is required and have special relevance to my clients. First, the damages awarded are barred by the First Amendment or were not proximately caused by defendants, and the district court's related mistakes, including refusing to instruct the jury not to consider damages barred by the First Amendment, tainted the entire trial and verdict. Second, the judgment should be reversed on the breach of contract claims because the agreements were not agreements. And third, the verdict on the recording statute claims was legally incorrect because the statutes were not violated, and the jury's verdict was tainted by the district court's refusal to allow the defendants to present the audio from the videos to show there was no expectation of privacy during the recorded conversations. Turning first to the issue of the First Amendment and damages, the court's consideration of whether the publication of RICO recording fraud and the like does not require this court to plow new ground. This court already decided similar questions in medical labs and Wasden and Food Lion from the Fourth Circuit is also instructive. These cases make clear that gaining entry by posing as someone else or not disclosing true motives does not give rise to liability for these torts. Wasden, for example, makes clear that gaining entry to property under a false impression or pretense does not make it a and also holds that a false statement made to gain entry is protected by the First Amendment as pure speech. The case law also makes clear that publication damages are not allowed without meeting the New York Times standard. Now to get around that, the district court here relabeled the damages that it allowed as quote-unquote infiltration and security damages. And in fact, all the damages awarded on all of the different claims fell into one of those two buckets. However, these damages are still attributable to publication and were not proximately caused by the defendants. Turning first to the security damages, there's no evidence that anyone required additional security because of CMP or Dalyden or any of the other defendants. In other words, the defendants were no threat to the plaintiff's employees who received the security services. They never acted in a threatening manner. They never threatened them at all. Rather, Planned Parenthood believed that there was a threat from third parties who were reacting to the publication of the video. Those damages were clearly caused by publication and are not allowed under the First Amendment. Now the entry damages are what the district court called infiltration damages. Can I ask you a question Ms. Hacker? I think if I understand your briefing correctly, you propose that we adopt a rule that all damages stemming from the publication here are barred by the First Amendment. Is that what you're arguing? I think that is what the case law holds, Your Honor, the Hussler case in particular from the Supreme Court. And so what about cases such as Cohen and I think it's Didiman, which it seems like focus on or tell us that reputational or emotional damages are barred by the First Amendment while economic damages are not. Can you help me with that? Yes, Your Honor. The district court also picked up on that distinction between economic or reputational damages. But I think it's actually a false distinction because certainly reputational damages can be economic. I think the better way to read Cohen, especially in light of Hussler, is to look at what it says about causation. In Cohen, the damages were caused directly by the breach of a specific promise not to publish. They weren't simply based on public reaction as they were in Hussler. Now Cohen doesn't apply here for four reasons. First, there was no promise not to publish here. Second, even if there was, there could only reasonably be one from the NAF agreements and that wasn't broken because the videos from the NAF conferences were never published. Third, the security needs were again not caused by Dilliden or CMP. And fourth, the infiltration did not cause harm because it didn't cause the lack of security. Dilliden's actions may have highlighted that for Planned Parenthood, but those conditions were not caused by Dilliden and therefore Planned Parenthood's decision to upgrade the security was not approximately caused by him. So then I guess based on what you're saying, if we were to find as you argue that all of plaintiff's damages are barred by the First Amendment, I guess, wouldn't we be immunizing anyone who takes up the cause of a citizen journalist from breaking the law? No, Your Honor. I think that if you would have to be, I think the right way to look at it is that wouldn't immunize anyone from breaking the law, but it does protect free speech by allowing for damages caused by publication. So a reaction to speech or the speech itself, that because that has such high public value as reflected in Supreme Court's opinions, that that should be protected. Now, if there were different laws at play, for example, the issue of intellectual property is a very distinct one that's governed by well-defined and longstanding precedent. Certainly a rule created in this case would not affect those cases. But yes, the general rule should be that publication damages are not allowed under the be approximately caused by whatever breach or violation you're talking about here. And that also is not present in this situation. Let me ask you if I can, this is a go to trespass, but you mentioned it briefly a little bit earlier. I guess I want to understand your best argument for why the district court erred in determining on summary judgment that the in pretending to work for Biomax negated the plaintiff's consent for their entry. Yes, Your Honor, I think the answer to that is that the district court's conclusion is simply irreconcilable with the Wasden case. The Wasden case said that the misrepresentation used to First Amendment and that simply because someone makes a misrepresentation to gain entry, that does not turn that entry into a trespass. It doesn't infringe upon the rights that trespass is designed to protect. It looks like the district court relied on the restatement. And I'm trying to figure out, I mean, it seems like that's rooted in common law. Well, why wouldn't we look at the restatement? I mean, we're dealing with a lot of states here, and we don't know what their law is on trespass. I don't think that was really briefed and trying to figure out exactly what to do here because of the cases like Hoodlion and and others. But I don't know, why was the district court wrong in relying on the restatement? Well, Your Honor, certainly the restatement could provide some helpful insight into determining or interpreting certain laws. But this court must follow this court's precedent and the district court's conclusion is simply irreconcilable with misrep, you know, I'm not aware of any differences in any trespass statutes in different states that would require a different outcome. But certainly under this court's precedent, the fact that entry was gained through a misrepresentation, just it does not allow for liability because it doesn't transform that entry into a trespass under this court's precedent. And so what's your comments on Food Lion? Yes, Your Honor. Food Lion is also helpful here. Now, they did, I believe they did uphold that the trip, the trespass claim there, but there was a different issue play there because the reporters were actually employees of the store. And so there was this issue under North and South Carolina law with respect to the duty of loyalty owed by employees. So that particular conclusion isn't really relevant here. Now, I see that I have about two minutes and 45 seconds left. And so I'd like to reserve the rest of my time for rebuttal, Your Honor, if that's okay. All right. Thank you. Counsel? State your appearance, please. Eric Zimmerman for Defendant Troy Newman. Sorry. May it please the court. There's a direct conflict between this court's decision in Doe versus Glanzer and the district court's decision here concerning the Fifth Amendment inferences. As this court noted in Glanzer, there is an inherent danger that when Fifth Amendment privilege is raised, particularly in front of a jury, there's an inherent danger of unfair prejudice because there is a common belief among the public and sometimes even among attorneys that invoking the Fifth Amendment is evidence that you're guilty. So as the court noted in the Glanzer case, a civil litigant who wants to invoke the Fifth Amendment before a jury has a fairly high bar to clear. They must prove that there is a substantial need for inferences and that there's not an alternative means of getting information into the record. Here, none of the inferences met that constitutional standard. For instance, there was ample evidence from a variety of sources such as testimony, documents, and stipulations concerning the relevant issues. There was no inference for which the plaintiffs met the rights. The prejudicial impact of the jury being presented with all of those inferences, which were also used in closing, warrants a new trial. And the best case on point is the Second Circuit's fairly recent, from a few years ago, case of Woods, where the court was presented with a very similar issue and held that there was a necessity for a new trial. Concerning the pattern requirements for the RICO claim, there's a fundamental error in the district court's decisions here. The error is that the court extensively relied on acts that are without question not racketeering activities in order to hold that there was a pattern of racketeering activity here. For example, in section 1961, subsection 1 of the RICO statute, the definition of racketeering activity is a laundry list of specific federal statutes and also certain state crimes. The only statute at issue here in that definition is subsections A1 and A2 of the identification transfer and production statute. So the only acts that even arguably could be racketeering activities in this case are production of identifications in or affecting interstate commerce or transfer of identifications that are in or affecting interstate commerce. The district court's decisions on summary judgment, as well as the post trial motions decision, the court extensively talks about other things to hold that there was a pattern. For instance, how identifications were used, the intent of the defendants, entries into conferences. Well, I guess, Mr. Shultz, why isn't it enough that the transfer and production of the false identifications enabled the defendants to attend conferences in various states as commercial exhibitors? Why wouldn't that simply be enough for purposes of RICO? So in order to have a predicate, there are numerous cases discussed in the briefing that were dealing with other provisions that deal with possession or use of identifications. So in some instances, possessing and or using an identification can violate other subsections of that statute or 1029, the next statute in the code. But here, using an identification does not very clearly identifies that the only conduct, for example, the Supreme Court's decision in Anza or Hemi group and this court's decision in Howard versus America online emphasize that any conduct of the defendants other than the particular alleged predicates is irrelevant for a RICO claim because as is common practice for a RICO plaintiff here, the plaintiffs kind of essentially argue that there's this complex scheme that involves a variety of acts such as using IDs, entering conferences, recording publications, and collectively, they argue all of those acts put together injured the plaintiffs, impacted interstate commerce, et cetera. But in, for example, Hemi group or Anza or this court's AOL decision, the courts have repeatedly noted that even if the So entering into a conference by showing an identification for a few seconds is not a production of that ID or a transfer of that ID that's in or affecting interstate commerce. Sorry, your best case for that is what? Anza, Hemi group from the Supreme Court, and then also this court's decision in Howard versus AOL. Essentially, in all those cases, there was a certain set of acts that were arguably under a predicate statute. And then the plaintiffs argued that those predicates were part of a bigger plan or a bigger scheme that involved other acts. And they argued that this quarter, the Supreme Court should consider all those acts collectively. But in those decisions, the court said the proper reference point under the statute is solely the alleged racketeering activities. And even if the plaintiffs were injured by something else, they may have claims or they can bring claims under other theories like a tort theory or a contract theory. And so, yeah, those several cases are probably the key ones. In addition, there are three key factors mentioned in the briefing and in this court's cases that further show there was no pattern here. Number one, this was not conduct that was fortuitously interrupted by a third party. The alleged handful of predicate acts occurred only over six months and were voluntarily ended by the defendants. Number two, there were not multiple distinct schemes. There was only all of these acts related to one plan. And although this court's cases and the Supreme Court note, that's not outcome determinative. And the Supreme Court's decision at page 240, the court said that's a quote, highly relevant unquote factor. So the fact that the alleged handful of predicate acts all related to one undercover investigation is a highly relevant factor showing there was no pattern. And then third. Did you want to reserve any time for rebuttal? Oh, no, no. Go ahead. Thank you. And then third, a third factor is, are these acts by their nature the type of conduct that projects into the future? For example, in this court's funds, savings and loans case, you had ongoing acts that were shielding past acts of criminal activities. Or you might have a regular practice of extortion or a regular practice of paying bribes. That's different than a case like this or the Food Covered Journalism is not a racketeering activity. And the fact that you may in the future do some sort of investigative work does not mean that you're essentially a racketeer. And then finally, the district court's opinion essentially held that there was one collective violation of the underlying statutes. For a pattern, you need at least two, generally more. I see that my time has expired. Thank you. Thank you. Thank you very much. Counsel, can you state your appearance, please? Yes. Good morning, Your Honor. Catherine Short for Defendant Alvin Romberg. And I'd like to reserve four minutes of my time. If it pleases the court, affirmance of this judgment would revolutionize the law of remedies and not in a good way. The definition of compensatory damages is the amount of money that will take to make a very subjective, open-ended concept of the amount of money it would take to make a plaintiff feel comfortable. PPFA here was awarded hundreds of thousands of dollars in compensatory damages when in fact nothing was damaged by defendant's infiltrations into their three hotel-based conferences. Now, one could come up with hypothetical situations where the presence of an intruder could cause a property owner to have to make upgrades. For instance, if the or planted a hidden recording device. But nothing like that happened here. And PPFA has never claimed it did. Its explanation is very simple. It was infiltrated once. It didn't want to have that happen again. And so it paid security consultants and made upgrades to make sure that it didn't happen again. Because there were no actual damages, PPFA argues that it had to take these steps to it's unsupported by any evidence. For example, PPFA put on no evidence that any attendees said they would not attend a future conference unless these upgrades were made. They never even told there was no evidence they ever even told their attendees about these new procedures and protocols and upgrades they had made supposedly for the sake of making their attendees feel more comfortable. And the record is devoid of any evidence that their attendees' sense of unease led to any sort of dollars and cents injury to businesses property as required by RICO. Also, as was noted in the earlier discussion, there were personal security expenses such as security guards and internet scrubbing services. And the record is crystal clear that these costs were incurred by Planned Parenthood in reaction to the public's reaction to the videos. And they are barred by the First Amendment the same way any sort of reaction, the fact that a company loses business because of a bad publication. That is also economic damages. And it's the same sort of economic damages except even more remote, less proximately caused than the damages that plaintiffs were rewarded here. Both of these categories of damages should have been eliminated as a matter of law at the summary judgment stage and review of the damage award should be de novo. And because there were no allowable damages, judges must be entered for the dependence on the contract claims as well as on the federal recording claims, which is contingent on the RICO claims. And the court compounded the error, even if this court were to agree that there were some compensatory damages, something that wasn't barred by the First Amendment, the court would still have to reverse the judgment here because of the lower court's prejudicial error in not instructing the jury that it could not award damages based on publication. And that's another review de novo because the court also instructed the jury that the First Amendment was not a defense to any claim here. The jury heard multiple times that the videos the defendants posted online had frightened Planned Parenthood staff. They heard outrageous hearsay testimony about doctors allegedly being threatened after the videos came out. It also heard the judge repeatedly overrule defense objections to this testimony coming in. A reasonable jury could not know that they should And the court's failure to give an instruction about publication damage requires reversal of the verdict on all the damages claims. Finally, the court erred in erroneously admitting irrelevant, extremely prejudicial testimony about, quote, the history of anti-abortion terrorism. The jury heard about bombings and arsons and murders committed by people completely unrelated to anyone in this case, other than the fact that they opposed abortions, like the defendants opposed abortion. This irrelevant testimony was so prejudicial that it necessarily denied the defendants a fair trial and mandates reversal of the entire verdict. Thank you. Thank you, Ms. Sharpe. Counsel, Mr. Padilla, would you like to state your appearance, please? The clerk asked me to wait until the- Oh, I'm sorry. Yes, uh, fixed. Thank you. May it please the court. William Perdue on behalf of PPFA and 10 Planned Parenthood affiliates. Your honors, this case is not about abortion, it's not about fetal tissue donation, and it's not about free speech either. This case is about a calculated, long-running conspiracy by the defendants to, quote, destroy the evil Planned Parenthood empire. From the other side today, the court has heard a lot of assertions and a lot of rhetoric, but not a lot about the evidence presented during the six-week trial in this case, which included 34 witnesses and 294 exhibits, including 70 video clips. That evidence, which was largely undisputed, showed that the defendants created fake identities and a fake company, lied to infiltrate conferences and clinics across the country, ignored binding contracts, and made hundreds of hours of secret recordings without consent. Based on that evidence, the jury awarded two very narrow categories of compensatory damages, which Judge Oreck carefully limited to avoid any First Amendment problem. On appeal, the defendants have challenged nearly every adverse decision that Judge Oreck made in the four-plus years that this case was before him, and I am happy to answer any questions the court may have about any of the issues that have been raised. But I'd like to start today with the First Amendment, and in particular with the damages arguments the defendants have raised. I think it is important to clarify what damages were actually awarded by the jury in this case. In our complaint, the plaintiffs initially sought a broad array of damages stemming from the publication of the videos. Those included millions of dollars to repair our website after it was hacked, for example. They also included costs to respond to an exponential increase in protest activity at our affiliates. On summary judgment, however, Judge Oreck barred most of those damages and limited us to two very narrow categories of damages. That's the infiltration damages, which are the costs that we incurred to secure our conferences and events, and the security damages for the costs to ensure the physical safety of the doctors and staff whom the defendants singled out. I'll start with the infiltration damages because that's the larger category, and really the First Amendment analysis is very simple for that category of damages. The defendants, or at least Defendant Romberg, concede that the First Amendment does not bar the infiltration damages. You can find that concession at Romberg's reply brief on page 15, footnote 9. That concession is well taken because the public dissemination of the videos to third parties was not part of the causal chain for the infiltration damages. The testimony on these damages was clear. The animating concern was not about third parties. The concern was that these particular defendants and their unknown associates might be able to continue infiltrating our conferences and events, whether through the channels that they had already used in the past or if they might innovate and use other channels in the future. I encourage the court to read the testimony from two witnesses about these infiltration damages. It's the testimony from Melvin Galloway, who was PPFA's COO. The testimony begins at 8 ER 2170, and also the testimony from Brandon Minow, who was PPFA's Director of Events and Conferences. His relevant testimony begins at 13 ER 3558. That testimony makes current clear that the concern was about the defendants, not about third parties, and so the publication to third parties just was not part of the causal chain. So that's the infiltration damages. Turning to the security damages, there's no First Amendment problem there either because the defendant's argument stems from the actual malice requirement articulated in cases like Sullivan and Hustler, and that actual malice requirement does not apply where the injury that the plaintiff suffered or the interest that they are suing to protect concerns their reputation and good name. The actual malice requirement does not apply where the injury is economic in nature, and that line between reputational and economic injury follows directly from the Supreme Court's decision in Cohen. The plaintiff's injury in Cohen indisputably stemmed from a truthful publication. The plaintiff there sued the defendant for publishing a news article that named the plaintiff as a source in violation of a promise of confidentiality, and yet the Supreme Court said that those damages could be recovered without showing actual malice because the plaintiff was not seeking damages for injury to his reputation or his state of mind, but rather for breach of a promise that caused him to lose his job and lower his earning capacity. As I understand it, the defendant's principal basis for distinguishing Cohen is the theory that the injury that was caused in Cohen could have been caused hypothetically, not by a publication to third parties, but by a private phone call to the plaintiff's employer. I encourage the court to read Cohen. I don't see any reasoning that talks about that kind of hypothetical alternative causal chain anywhere in the opinion, and because of that it's actually not clear to me that that distinction even accurately describes the facts in Cohen itself. Part of the injury in Cohen was injury to the plaintiff's earning capacity, which presumably resulted from the publication of this news story, not just to the plaintiff's employer, but to other prospective employers. So I think this distinction based on this phone call theory simply does not work. For all of these same reasons, the jury instruction that the defendants requested, which would have instructed the jury that they cannot award damages that flow from or result from a publication, is barred. That instruction was simply inconsistent with the Supreme Court's decision in Cohen, where the damages, again, indisputably flowed from a truthful publication of information. Indeed, the defendant's proposed publication damages instruction is actually inconsistent with their own view of the law that they've advocated on appeal. Again, their view is that if the same harm could have resulted from a private phone call, then the damages are allowable under the First Amendment, but their same damages could have resulted from a private phone call. I don't think this court should hold that it's an abuse of discretion for the district court to refuse to give a proposed instruction that is based on a view of the law that not even the defendants will defend on this appeal. If there are no further questions about the First Amendment, I'll turn to the compensatory damages. There again, this argument applies only to the infiltration damages. Again, I encourage the court to look at the testimony from Galloway and Minow, because that testimony makes clear that the plaintiffs incurred these costs to prevent the defendants themselves and their unknown associates from infiltrating our conferences and events. Thus, these costs restored the status quo ante before the defendants themselves had demonstrated the ability and the strong desire to infiltrate our conferences and events. When we found out about these infiltrations, it was a crisis for Planned Parenthood. The purpose of these conferences is for attendees to feel secure having sensitive conversations with professional colleagues, and we simply could not hold these conferences if we knew that the defendants could be infiltrating them. The defendant's argument is that these damages are not compensatory in any way, and I think the many decisions we've cited under the Computer Fraud and Abuse Act show that these kind of damages to assess an infiltrated system and prevent future infiltration are in fact compensatory in nature. I also think an analogy may be helpful to the court here. I think the courts in criminal stalking cases often award restitution to victims for the cost of a home security system, or changing the locks on their doors, or even sometimes bodyguard services. The reason that that's proper restitution is because it prevents the defendant in particular from breaking in or taking unlawful actions against the defendant, and thus restoring the anti-status quo before the particular defendant demonstrated the ability and the willingness to harm the victim through unlawful acts. Judge Murguia also asked a few questions about the trespass claims. I'd like for you to address that if you could. I'm happy to. First of all, the court doesn't need to reach the trespass claims if you affirm under RICO, but if you do get to these trespass claims, this is a paradigmatic case of trespass by misrepresentation. Do we not get to the trespass claims even though the district courts seem to rely on trespass or refer to trespass for the basis for the injunction? That's a good point, but isn't it also tied to the injunction? Yes, it is. Thank you, and I appreciate the clarification. This is a paradigmatic case of trespass by misrepresentation. I think everybody agrees that the plaintiffs would not have let the defendants in if we knew who they were. This is not a case where plaintiffs allowed entry to a broad category of any member of the public who was willing to pay the entrance fee or was interested in learning about Planned Parenthood or the services we offer. These were secure limited attendance events in which we granted entry only to specific registered vetted invitees. That was an exercise of our right to all of the cases that the defendants rely on. Most of the cases they rely on involve cases where the property is open to a broad category of invitees and that anybody within that category was free to enter. This is not that kind of case. We did not extend an invitation to just anybody. We extended it to particular people whom we vetted. So you think that does distinguish this case from Desnick? Absolutely. In Desnick, Desnick involved patients who are tester patients who came into areas that were open to anybody who expressed an interest in receiving ophthalmic services. I think the key part of Desnick is there's a line in Desnick where it's a decision from Judge Posner that has a lot of explanation and there's some key explanation in there. There's an example given where if a busybody were to gain entry to a house by pretending to be a meter maid, Desnick said it would be obvious that that's a trespass because you're extending entry to a particular person who stated that this is why I'm coming in, this is who I am. I think the defendants here are very much analogous and they were much more than busybodies. They were not just coming in to look around, they were coming in to do harm to us. Well, I guess I'm trying to figure out what to do here because in Wasden and at the Animal Defense Fund versus Wasden, our court seems to cite favorably to Desnick for the proposition that consent to an entry is often given legal effect even if it's fraudulently induced because that entry does not infringe upon specific interests trespass seeks to protect. So why shouldn't we conclude that the defendant's misrepresentations do not implicate the interests that trespass seeks to protect? So the interest here is the right to exclude which is a fundamental aspect of the property right. We jealously guarded that right to exclude and only invited specific vetted invitees and so that's why it impaired our right to exclude. I think the discussion here, is an opposite. I think it's important to be clear about exactly what the court was deciding in Wasden. The court there struck down a statute under the First Amendment as facially overbroad because it punished gaining entry to an agricultural facility through misrepresentation and in particular the applications of that statute that were overbroad were instances in which you but to an area that was quote generally open to the public end quote. So the specific examples that the court talked about in Wasden are an example of a restaurant or an example of a grocery store where there are particular situations in which you might lie to get in but the space is generally open to the public. The spaces here were not generally open to the public at all. They were quite the opposite. You talked about the right to exclude but didn't the medical offices in Desnick have the right to exclude journalists there? They absolutely had the right to exclude but they chose not to exercise that right for a broad category of people. They said we are issuing an open invitation. Anybody who says they're interested in our services is welcome to join. We don't care what your particular identity is. We don't care what your background is, what your experiences are. We're not going to ask about what your particular purpose is. As long as you're somebody expressing interest in our services, welcome in. That is a broad invitation that is simply not something we extended here. Is there a case law to support that? I think the reasoning in Desnick absolutely supports that. I talked already about the example in Desnick itself where it says a busy body posing as a meter maid is obviously a trespasser. The implication of the defendant's argument seems to be that there's no such thing as trespass by misrepresentation. I'm having occur under their theory. It's clear under Desnick and under the restatement that trespass by misrepresentation is a recognized form of trespass under the law and this is a paradigmatic case of it. We decided we wanted to let in very particular people and they lied to us. Isn't it enough that the bends can be sued for other causes of action like the breach of contract for fraud and fraud based on their misrepresentations? Is it critical that those actions be considered trespass here? All the damages awards can be upheld under multiple causes of action. I believe you are right that the trespass was part of the court's reasoning for the injunction. I apologize, I don't have the court's reasoning precisely at hand on that issue. I'm happy to provide a supplemental letter if that would be useful. It refers to other reasoning as well but it does refer to the trespass and I'm just curious to see what you thought in terms of that. I guess the other question I had for you, it seems like the district court granted the plaintiff's motion for summary issue in part because the misrepresentations were extensive enough that they negated consent, if I understood the district court correctly. I was just wondering if the scope of the misrepresentation was determinative, should the district court maybe have let the jury decide whether they were extensive enough? I don't think that the misrepresentations were extensive enough to negate consent was really disputed at summary judgment or a trial. I mean everybody agrees that if the defendants had told the truth we would not have let them in and that was and I think everybody also agrees it's undisputed what was undisputed but I think that would have been true in Desnick too if they if they had known they would not have written. The difference with Desnick is that the court, the property owner there didn't care, they didn't ask what is your purpose, what's your background, what are your personal characteristics, they said we don't need to know about that in order to grant you a license to enter here. So long as you are a person expressing an interest in our services that is enough for us and you can come in and the defendants in that case did not volunteer more that might have led the property owner to say oh wait actually I didn't mean that anybody who could who you know is interested in our services come in actually not not you except you they didn't say that they just said anybody interested in our services can come in. Mr. Perdue could I interject a question please? Absolutely. Sorry to interrupt your argument I would just like to hear your statement as to all the ways that your clients contend that the conduct of the defendants interfered with your fair use of or with their fair use of their property. I'm sorry I don't quite understand the question. The question I'll try to rephrase what are the ways in which your client contends the defendant's conduct recording conversations having fake credentials interfered with your clients use of their property. So the first and foremost way that was that it interfered with our right to exclude. We had decided we only wanted to let in particular people and these were not the people we wanted to let in and they lied to us and prevented us from excluding those who we wanted to exclude. I think beyond that there's also the issue that even if there were valid consent in this in this instance the defendant succeeded the scope of contract before these defendants entered and the jury found and for certain contracts and the court found for other contracts that the defendants violated those contracts and exceeded the scope of the consent that we had we had given them. So I think that provides yet another way that this court can affirm the judgment of liability for trespass. I'd like to turn now to the Can I have you turn to the wiretap please? I just wanted you to respond to some of the arguments that were made regarding the federal wiretap act. Because I'm trying I'm also trying to figure out you know did there are you I guess is it fair to say that defendants made their recordings to publish damaging videos about Planned Parenthood which is not a tort? So I'm happy to explain exactly how the how the federal recording statute claims work. So the federal wiretap statute has an exception to its one-party consent provision where the where quote the communication is intercepted for the purpose of committing any criminal or tortious act. Here the what the jury found is that the defendants recorded in furtherance of the RICO conspiracy and violating civil RICO is both a crime and a tort and substantial evidence supports that that finding by the jury. To begin with obviously finding about what the defendant's purpose is is is a classic quintessential jury question and there was substantial evidence to to show that the recordings were integral to the RICO conspiracy. For one thing I think there are two ways two main ways in which they were central here. One is they were just the centerpiece of the enterprise of the RICO enterprise whose goal was to harm us. But beyond that I think it's also important for the court to recognize that the recordings were also part of how the the RICO enterprise sustained itself. How the recordings were part of how the the enterprise fundraised and they used the videos to fundraise both before and after they released the videos publicly. It's also part of how the RICO enterprise recruited new members. The videos were an integral part of how they I think I have a sense of the enterprise but I guess my more pointed question what was the separate crime or tort that would have been the to be shown and supported here? So the the crime or tort is violating civil RICO. That is a statutory tort which depends on an underlying criminal violation. So that is the crime or tort that that the recordings were furthered. Now I think part of part of the issue here is that I will grant you that the the temporal pattern here is different than in the paradigmatic case of say of say blackmail where you record and then you use the recording for the purpose of committing blackmail afterwards. So what what did the recorders, sorry to interrupt you, what did the recordings have to do with the defendant's alleged pattern of racketeering producing and transferring false IDs? Because that's what you allege is your in your pleading with respect to the RICO enterprise. Absolutely. So the important piece about the RICO enterprise it is that is that is an ongoing excuse me that is an ongoing tort. It is not something that happens at a particular moment in time especially in this kind of case where we where we allege open-ended continuity and that is how we establish the pattern. So the the evidence we presented and that the the jury credited is that the defendants produced and transferred fake IDs on multiple occasions and that there was a threat of continued future criminal activity a continued acts of racketeering and the recordings were an integral part of that threat of future continued criminal activity. And part of the reason for that is that the recordings were how they fundraised how they got money to be able to continue to to to engage in acts of racketeering in the future. It's also how they recruited new members into the conspiracy. This is particularly relevant to defendant Lopez. The recordings were how he was initially brought in by transcribing the recordings. He viewed the recordings and was kind of persuaded to join the conspiracy through through the use of the recordings in that way and thus the recordings were part of how the enterprise sustained itself into the future and how it presented a a threat of continuing criminal activity into the future. Counsel could you if I might interrupt you I'd like you to go back to a point you were beginning to make about the temporal pattern because for me this argument feels circular in terms of RICO the wiretapping and then the underlying tort and for the purpose of violating RICO. What do we do with the circularity of that? Is it just the nature of RICO being a ongoing pattern federal statute or don't let me interrupt you any further. Yes I think your question I think gestured in the direction that we that we are suggesting which is that because RICO is an ongoing tort or crime and part of the element of it is that it must present this risk this threat of continued future criminal activity. So the temporal pattern here is you have acts of transferring and producing the IDs before recording then you have recording and then you have the continued threat of continued acts of racketeering after the recordings in part because of the recordings. The recordings are part of what make that threat of continued criminal activity in the future real. What's the threat of the criminal activity there though? So the criminal activity that is part of the gloss on the word pattern of racketeering activity in the in the RICO statute. So the RICO predicate acts have to be have to form a pattern there have to be at least two of them and they have to be related to one another and be continuous in some way. Here we showed open-ended continuity which is continuity where that where there's a threat of continuing criminal activity into the future and the recordings here were an integral part of how the past acts of producing and transferring these IDs presented a threat of continuing criminal activity into the future. It seems and I'm going to ask this I guess this question again that the defendants made recordings or at least is what you are also trying to convey that the defense made their recordings to publish damaging videos about Planned Parenthood. That is absolutely one of the purposes but but that's not a tort. It's not but the jury was not required to find that you know the purpose of committing any criminal or tortious act was the only purpose of the videos they were just required to find that it was a purpose. This is a classic province of the jury so we're talking about a sufficiency of the evidence here. Could a reasonable jury conclude that one of the purposes of making these videos was to further the RICO enterprise into the future such that it would present a continued risk? You have a good case that you know highlights that because it seems like all the cases seem to or at least the language that I've read is it's a separate act in furtherance you know to further in the future. So the threat of criminal activity in the future is is separate from the from the acts of recording itself. Those cases talk about you know it's not enough if it's it's not for the purpose of committing any tortious act if the an enterprise through a pattern of racketeering activity goes well beyond the mere act of recording itself. So in the limited time I have left I'll address the RICO pattern because that I think that's related to this. I think that there was ample evidence here to support the jury's finding of a pattern of racketeering activity. Again this is a quintessential jury question and there was lots of evidence here beyond the particular predicate acts. There was testimony that the defendants planned to do future projects. Daleiden testified as much. They fundraised to perform future projects. I see that my time has ended. May I finish this point? I'll give you 30 seconds to conclude. The jury also was entitled to find that the defendants are not just committed opponents of abortion. They believe that abortion is a holocaust. They believe that abortion providers are murderers. They believe that they want to destroy the evil Planned Parenthood empire. Defendants who believe those sorts of things are more likely to take extreme measures including illegal measures. And then finally the fake IDs were absolutely integral to the scheme here and to the only way that CMP has ever done business. I see that my time has ended. We ask the court to affirm the judgment below. Thank you. Ms. Hecker? Yes, your honor. A few quick points. I just wanted to point out that we've just heard from the plaintiffs here that just because a person is pro-life they're more likely to commit crimes. They're more likely to commit specifically. I'm not sure I heard that but on what basis did you hear that? What was it that was said that made you make that conclusion there? That was what Mr. Perdue just said in terms of the fact that the defendant's pro-life beliefs make them more likely to commit crimes. He also used an analogy about stalkers and the damages that someone could receive from stalker which has no applicability here. But I want to push back against a couple points he made. One being that there was supposedly strict restriction of who could attend these conferences. That's just not the reality as presented in the record. Just two quick points on that. On page 6844 of the except of record which is the NAF exhibitor agreement. It says eligibility to exhibit companies with intended business interest in reaching reproductive health professionals including NAF provider members are invited to participate in the NAF annual meeting. That's extremely broad. And we also know from the Galloway testimony that he admitted that a simple google search could have alerted him to the potential problems with the identity of Robert Sarkis and Biomax. And that's at 2251 to 55 in the excerpt of record. So the idea that they were exercising a lot of control over who could come to these conferences just simply isn't correct. And your honor was absolutely correct to pick up on the fact that in Desnick the areas were not open to the public. In Food Lion the same thing. The public is not invited into meat packaging areas of grocery stores. We're not talking about the areas where people shop. So the Wasden case is extremely important here because it goes to whether there could be trespass. Now I think I only have a few seconds left so I just wanted to point out that on the recording statutes of the federal wiretapping there was no expectation of privacy here and the medical labs case at this court is very instructive in making that conclusion. So there can be no liability on those statutes. Thank you your honor. Thank you. Chief Judge McGeer could I? Sure. Although Ms. Hacker's time is complete could I ask her a quick question? Yes. And from my perspective I'd like Ms. Hacker for you to address the same question I asked Mr. Perdue but from your client's point of view. What's your basis for contending that your clients did not in any way restrict the fair use of the plaintiff's property? Yes Judge Gould and I think that that's illustrated by the fact that the defendants did not disrupt any of the conferences. They did not damage any property while they were there. In fact it was many months after these conferences occurred that anyone realized that those people were not actually a company selling fetal tissue. So they went undetected. They were there just like everyone else. They did not interfere with anything that the plaintiffs were doing at their conferences and they merely recorded the things that the plaintiffs said voluntarily. Thank you. Thank you. Thank you. Short? Yes. Thank you Your Honor. Mr. Perdue justified the award of the compensatory infiltration damages here with only two citations. He cited the Computer Fraud and Abuse Act which is a federal statute which has its own remedies and which remedies were created specifically to enhance what the common law allows. It's specifically because the common law does not allow for damages for anticipated harms that or for investigations or for upgrades that Congress enacted the Computer Fraud and Abuse Act. You cannot cite that as specifically because this this circuit has specifically held that we construe a statute as displacing a substantial portion of the common law only where Congress has clearly indicated its intent to do so. That is the U.S. v. Nozzle 676 F3rd F54. So and that was specifically talking about the CFAA. It was not intended to displace the common law on damages. His second citation is he just tells us that in stalking cases victims get these enhancements. He has no citations for that. He cites no statute or case law. He just tells us that. The third point is I mean I will I just say there is nothing in common law that supports damage awards to forestall projected possible harms. Possible harms threatened harms are dealt with in law by injunctive relief not by giving the plaintiff whatever money they think they might need to enhance their security to prevent a repetition of a tort. That just doesn't happen. And another point is these are in no way caused by the RICO predicate acts of making and transferring. Well again the transfer of the I.D. I want to clarify something about that. Judge the transfer of the I.D. simply mean the transfer from Mr. Daleiden to his co-investigators. It is not the use that the showing of an I.D. to someone at an exhibit table or at a registration table at one of these conferences. Judge Orrick himself said he was not buying that argument that merely showing the I.D. constitutes a transfer. So we have the limited number of the production and then the inter-team transfer of these I.D.s was the only predicate acts. And so then you look to the personal security damages. Whether or not those are I mean I think they are clearly first amendment barred by the first amendment. But let's just look at them from a approximate cause stand for they make the I.D.s. They show the I.D.s. They enter conferences. They meet people. Let's just say Mary Gatter. Mary Nukatola introduces Daleiden to Dr. Gatter. Gatter meets late for lunch. A recording is made. The recording is published. There's a reaction. Phone calls come in to Planned Parenthood. The CEO decides to hire personal security. It is precisely because of that extremely long chain of events that the district court said he was not going to allow damages for third party reactions because that's what we're talking about. The personal security damages are based on third party reactions to videos which themselves only came out after a long chain of circumstances. Many steps removed from the production of the I.D. And I would also like to I agree with Ms. Hacker that there was sort of a drive-by allusion to the prejudice argument that Judge Oreck allowed extremely prejudicial testimony about the about completely unrelated acts by completely unrelated parties that undoubtedly prejudiced the jury against these defendants. Thank you. Thank you. Thank you all very much. We appreciate the argument presentations here today. Ms. Hacker, Mr. Zimmerman, Mr. Short, and Mr. Perdue. Thank you for articulating and representing your clients here today. The case of Planned Parenthood Federation of America versus Center for Medical Progress is now submitted and we are adjourned. Thank you. Thank you. Thank you, your honor. Thank you. This court for this session now stands adjourned.
judges: MURGUIA, GOULD, Freudenthal